UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMER CATALBAS,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Warden,<br>Otay Mesa Detention Center; et al.,<br><br>                                    Respondents. | Case No.:  25cv3579-LL-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Omer Catalbas's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response in opposition to the Petition [ECF No. 5], and Petitioner filed a Traverse [ECF No. 7]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.      BACKGROUND

Petitioner is a Turkish citizen who entered the United States on March 17, 2024 and was released on his own recognizance after being served with a Notice to Appear. Pet. ¶¶ 1, 64. The Notice to Appear states that Petitioner is a noncitizen present in the United States who has not been admitted or paroled, as opposed to an arriving noncitizen. ECF No. 1-2 at 4 (Ex. 1). The Order of Release on Recognizance dated March 18, 2024

1

and issued by the Department of Homeland Security (DHS) states that Petitioner is being released on his own recognizance with certain conditions "[i]n accordance with section 236 of the Immigration and Nationality Act," codified as 8 U.S.C. § 1226. ECF No. 1-2 at 7 (Ex. 2).

Petitioner filed an application for asylum on July 24, 2024. *Id.* It has since been denied by an immigration judge who also ordered his removal to Turkey, but Petitioner has reserved appeal of the order. ECF No. 5 at 2 n.1.

On June 5, 2025, Petitioner was detained under 8 U.S.C. § 1225(b)(2) at Otay Mesa Detention Center after attending his hearing at immigration court. *Id.* ¶ 2, 42. Petitioner has no criminal history. ECF No. 1-2 at 23, 24 (Ex. 4).

On December 14, 2025, he filed the instant Petition, alleging that his re-detention without notice or hearing violates the Fifth Amendment's Due Process Clause and that he is wrongfully detained under 8 U.S.C. § 1225(b). *Id.* ¶ 3. He seeks a writ of habeas corpus directing Respondents to immediately release him from custody or alternatively, a bond hearing. *Id.* ¶¶ 5–6.

On December 29, 2025, Respondents filed a Response acknowledging that (1) DHS instituted a notice on July 8, 2025 requiring that "anyone arrested in the United States and charged with being inadmissible to be considered an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A), subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and not subject to detention under 8 U.S.C. § 1226(a)"; (2) in the class action *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the district court declared the DHS notice unlawful under the Administrative Procedures Act; (3) a final judgment was entered in *Maldonado Bautista* on December 18, 2025; and (4) therefore, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to an order from this Court directing a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No. 5; *see also Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) (entering final judgment for members of the Bond Eligible Class).

On January 2, 2026, Petitioner filed a Traverse arguing that a bond hearing is not an adequate remedy for re-detention in violation of his due process rights, and "the only proper relief is his immediate release to restore the status quo ante." ECF No. 7 at 3.

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Petitioner argues that the summary revocation of his parole without notice or a hearing violates the Due Process Clause, and that he is not subject to mandatory detention. Pet. ¶ 3. Respondents do not directly address Petitioner's claims, instead conceding that in light of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. ECF No. 5.

### A.   Detention Statute

The Courts finds—independent of *Maldonado Bautista*—Petitioner was wrongfully detained under 8 U.S.C. § 1225(b). DHS released Petitioner on his own recognizance expressly pursuant to 8 U.S.C. § 1226. ECF No. 1-2 at 7 (Ex. 2). Section 1226 provides that a noncitizen may be released on conditional parole pending a decision on whether he is to be removed from the United States. 8 U.S.C. § 1226(a)(2)(B); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (finding the phrase "release on recognizance" in the form titled "Order of Release on Recognizance" is another name for "conditional parole" under § 1226(a)). The Court agrees with other courts that have found "[t]he government cannot now 'simply switch tracks' without explanation or any

25cv3579-LL-DDL

basis and purport to subject Petitioner to mandatory detention under § 1225(b) after previously releasing him under § 1226(a)." *Shen v. Larose*, No. 25CV3235-GPC(BLM), 2025 WL 3552747, at *7 (S.D. Cal. Dec. 11, 2025) (citing *Orozco Acosta v. Bondi*, No. 25-CV-09601-HSG, 2025 WL 3229097, at *3 (N.D. Cal. Nov. 19, 2025)); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) ("Sections 1226(a) and 1225(b) cannot be applied simultaneously. Their detention regimes are facially inconsistent: one provides for discretionary release with procedural protections, while the other mandates detention without discretion."). The Court finds Petitioner was and is subject to § 1226(a), not § 1225(b).

### B.    Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on parole, Petitioner had a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Since the initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, and there is

25cv3579-LL-DDL

no indication that he has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful).[1] The proper remedy for the unlawful detention is Petitioner's immediate release

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have

25cv3579-LL-DDL

subject to the conditions of his preexisting parole. *See Noori*, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** Petitioner's Petition.[2]

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and **ORDERS** as follows:

1.    Respondents shall immediately release Petitioner from custody subject only to the conditions of his preexisting parole.

2.    Prior to any re-detention of Petitioner, he is entitled to notice of the reasons for revocation of his parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d

found violations of the APA in similar circumstances. *See, e.g.*, *Noori*, 2025 WL 2800149, at *3, 13 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL 2770629, at *4 (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

[2] In his prayer for relief, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES without prejudice**. Pet. at 30.

25cv3579-LL-DDL

at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

      3.    The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: January 22, 2026

_____
Honorable Linda Lopez
United States District Judge

25cv3579-LL-DDL